Case 3:22-cv-02600-C   Document 1-1   Filed 11/18/22   Page 1 of 20   PageID 6

FILED
10/12/2022 11:11 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Shunta Jackson DEPUTY

2 CIT ESERVE

DC-22-14529

CAUSE NO. _____

| | | |
|---|---|---|
| VERONICA VENZANT, individually and as next friend of, M.E. (minor) § § § *Plaintiffs,* § § v. § § BIGELOW ARIZONA TX-282 LP d/b/a § BUDGET SUITES OF AMERICA and § BIGELOW ARIZONA CORPORATION § § *Defendants.* § § | | IN THE DISTRICT COURT 193rd _____ JUDICIAL DISTRICT DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND PETITION FOR DECLARATORY RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Veronica Venzant, individually and as next of friend of, M.E., a minor, complaining of **BIGELOW ARIZONA TX-282 LP d/b/a BUDGET SUITES OF AMERICA and BIGELOW ARIZONA CORPORATION**, Defendants herein, and for causes of action, would respectfully show unto the Court as follows:

### DISCOVERY CONTROL PLAN

1.      Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.3.

### PARTIES & SERVICE OF PROCESS

2.      Plaintiff, Veronica Venzant, is a resident of the State of Louisiana and brings a Bystander liability claim in her own name and right and the last three digits of her social security number are 500 and the last three numbers of her identification card number are 007.

3.      Plaintiff, Veronica Venzant, as the next friend of M.E., is a resident of the State of Louisiana and the last three digits of her social security number and her driver's license are started

*Plaintiff's Original Petition*                                                                                                          1

directly above. Veronica Venzant is the natural mother of M.E., a minor, and on his behalf, as next friend, asserts a direct claim for personal injuries for M.E.

4. Defendant, Bigelow Arizona TX-282 LP d/b/a Budget Suites of America (hereinafter "BSA" or "Defendant"), is a Texas Limited Partnership and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. **ISSUANCE OF CITATION IS REQUESTED AT THIS TIME.**

5. Defendant, Bigelow Arizona Corporation, is a foreign corporation whose mailing address is 4640 S. Eastern Avenue, Las Vegas, NV 89119. Defendants may be served by serving the Texas Secretary of State at P.O. Box 12079, Austin, Texas 78711-2079, as Defendant's agent for service because Defendants does not have a registered agent for service in Texas. TEX. CIV. PRAC. & REM. CODE §§ 17.026, 17.045(A); TEX. BUS. ORGS. CODE §§ 5.251-5.253. **ISSUANCE OF CITATION IS REQUESTED AT THIS TIME.**

## MISNOMER/ALTER EGO

7. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## VENUE & JURISDICTION

8. This Court has personal jurisdiction over Defendants because it is either a resident of the State of Texas or regularly conducts business within the State of Texas for the purpose of accumulating monetary profits, has continuing contacts with Texas, and is amenable to service by a Texas Court. Furthermore, Plaintiff would show that Defendant(s) engaged in activities constituting business in the State of Texas as provided by section 17.042 of the Texas Civil Practice

and Remedies Code, in that said Defendant(s) committed a tort in Texas.

11. Venue in Dallas County is proper under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Dallas county.

## AMOUNT IN CONTROVERSY

12. As required by Texas Rule of Civil Procedure 47, Plaintiff states that she seeks monetary relief over $1,000,000.00.

## ASSUMED NAMES

13. Defendants do business under an assumed and common name of Budget Suites of America and pursuant to Rule 28 Tex. R. Civ. P., Plaintiff brings this action against Defendants, under its common and assumed d/b/a name for the purpose of enforcing Plaintiff's substantive rights and on a motion by any party or on the court's own motion the true name, if different than the named Defendant, may be substituted.

## STATEMENT OF FACTS

14. Defendants Bigelow Arizona TX-282 LP d/b/a Budget Suites of America and Bigelow Arizona Corporation (hereinafter collectively "BSA" or "Defendants") at all material times herein, owned, operated and maintained the extended stay hotel located at 10222 N. Walton Walker Blvd, Dallas, Texas 75220 (hereinafter the "Property" or "Budget Suites" or "the BSA Property").

15. On or about March 15, 2021, Veronica Venzant was a guest staying at the BSA Property in Unit 2084 when she took her five minor children, including her son M.E., who were also motel guests, to play in the courtyard of the Budget Suites.

16. At approximately 6:00 p.m., Ms. Venzant was startled and the children's fun in the

BSA courtyard was interrupted with the frightening and unmistakable sound of gunshots. Ms. Venzant instinctively began herding the children toward her building on the Property.

17. However, despite the quick reactions of Ms. Venzant and her best efforts to protect her five children, her then 6-year-old son, M.E., was struck by a bullet in his upper thigh and buttocks area by one of the multiple gunshots fired.

18. While M.E. was not the intended target, the bullet was not discriminating, striking M.E. and shattering in M.E.'s right thigh with bullet fragments dispersing in his body.

19. Veronica Venzant, while keeping watch over her other children, attended to M.E.'s bleeding wounds. A t-shirt was used as a tourniquet to stop the bleeding until EMS personnel arrived and rushed M.E. to the hospital.

20. The morning after the shooting, March 16, 2021, with a release of liability in hand, two BSA employees knocked on Veronica Venzant's door. The managers walked into the living space of Plaintiffs appearing to be concerned about M.E. which they represented was the purpose of their visit.

21. The BSA employees were apologetic and represented that they were there only out of compassion and concern for M.E., and to *graciously* provide Veronica Venzant with two weeks of free rent.

22. Veronica Venzant appreciated the good will gesture and was thankful for the kindness being demonstrated by BSA. Represented as nothing more than a compassionate gift the day after the shooting, the BSA managers asked that Veronica Venzant sign acknowledging the two free weeks.

23. BSA managers presented a clipboard indicating they would need Ms. Venzant signature in order to receive the two free weeks. Veronica Venzant, happy to receive the two-week

free rent goodwill gesture by BSA, signed where the BSA employees indicated to her acknowledging the free rent. The managers did not let go of the clipboard nor permit Veronica Venzant an opportunity to read and understand the document, nor did they read it to her or provide her with a copy. Needless to say, they also did not allow Ms. Venzant an opportunity to discuss the document with an attorney.

24. Veronica Venzant, relying upon the representations of the BSA employees that she simply needed to sign the document acknowledging the two-week rent gift and that they were there out of concern for M.E., signed where the BSA employees indicated to her to sign not reading the document or feeling any need to.

25. The true purpose of the visit, however, was not to provide Ms. Venzant with a gift or to check on M.E. out of concern, it was to secure a release of liability for BSA. The managers were able to pull off their intended ruse, fool Veronica Venzant into thinking she was merely accepting the free rent, and bait and switch her into signing a release.

26. Ms. Venzant was not thinking about lawsuits and liability, did not have legal counsel by her side, and was not prepared for the incident. BSA on the other hand, was prepared for this exact scenario—it had release of liability forms at the ready and had already trained managers in the art of securing releases under deception. Why else would one show up the day after a child was shot with a pre-typed release already having the two free weeks of rent added in the release?

27. The BSA employees also snapped a photograph of M.E. without permission which is believed to also be a part of the liability limiting training provided to managers by BSA along with the established training to have a tenant sign a release while still in shock and as close to the incident as possible all the while not telling the tenant that they are releasing BSA from liability.

28. As it turns out, the shooter or shooters, upon information and reasonable belief, were two residents living on the Property in unit 1083.

29. A BSA manager in training was in close proximity when the shooting occurred, and the shooters did not seem deterred by his presence. Interestingly, in the portions of BSA's incident file on the matter that Plaintiff has obtained to date, the file notes do not indicate whether or not BSA reported that the shooter(s) resided at the BSA Property where the shooting occurred to the police.

30. The BSA internal incident report concerning M.E. completed is a mere one page of information, but again, fails to indicate whether vital information, such as the suspects' contact information and room/apartment number was transmitted to the police. However, the one page report does indicate under actions taken, that a notice to vacate was posted on the door of unit 1083 where, apparently, the two men responsible for the shooting resided. The notice to vacate was apparently posted within 40 minutes of the incident, however, nothing indicates whether the police interviewed the occupants of unit 1083.

31. BSA's file information also does not indicate whether BSA employees took any statements from the potential suspects which BSA apparently believed lived in unit 1083. Further, the partial file obtained does not provide any history of problems regarding the suspects in unit 1083.

32. Upon information and reasonable belief, there were red flags and other incidents involving the two men occupying unit 1083 for some time.

33. The shooting was not the first violent crime on the Property. Budget Suites statistically has a higher crime rate than comparable properties in the immediate or near vicinity. Further, Budget Suites created an atmosphere which attracted crime including inoperable security

cameras; lack of a sufficient number of security surveillance cameras considering the size of the property and knowledge of prior criminal acts being carried out on the property; inadequate and improperly or undertrained security staff; insufficient lighting; a pattern of management and security personnel failing to respond to security alerts; inadequate security protections for invitees; and failure to install and/or repair physical barriers such as gates, locks, fences and doors.

34. Additionally, Budget Suites, by information and reasonable belief, failed to secure an up-to-date security assessment, failed to require security patrol log times they patrolled a set route, and failed to have a comprehensive security plan.

35. Regardless, without any social or moral conscience, Budget Suites tried to take away the rights of Ms. Venzant and M.E. the very day after the incident. Ms. Venzant, still in shock and seeking to protect her children and provide them shelter, signed and therefore, entered into a release agreement (the "Release") concerning the "personal injury and/or property damage" **Ms. Venzant personally sustained** in exchange for two weeks of rent on the Property, totaling a value of $722.75. The release agreement specifically stated the following:

> Releasor, alleges that he/she has sustained personal injury and/or property damage in the nature of Any and all alleged injuries sustained to a young boy living in apartment F2084 (brief description), or through an event or series of events occurring on or about the date of on our about 03/15/2021, at the following property address: 10222 Walton Walker Blvd, Dallas, TX 75220.
>
> Releasor has received the following consideration for this Release: 2 Weeks rent in F2084 ($722.75 Value), proof of which may be attached to this release and included as part of this Release. The payment of this consideration does not constitute an admission of liability and represents only a good faith compromise of a disputed claim and consideration for this release.

36. Defendants' attempt to use the Release to avoid being held responsible for the past and future medical expenses and damages to the 6-year-old child, M.E. fell short. Only by chance of fate, the Release did not have any bearing on claims against Bigelow Arizona TX-282 LP d/b/a Budget Suites of America made **on behalf of M.E.**

37. M.E., as a result of being shot, required medical treatment. Furthermore, being the tender age of six (6), the event has been very traumatic for M.E. and the event is certain to remain with him for the remainder of his life as well as fragments of the bullets still within his young body. BSA's attempt to trade the physical and emotional injuries sustained by M.E. by securing a release from M.E.'s mother for $772 worth of free rent exemplifies Budget Suite's placement of money above its guest's safety and wellbeing.

## BUDGET SUITES OF AMERICA'S HISTORY OF VIOLENCE

38. There have been an extremely high number of violent crimes at this BSA Property over the past few years. This BSA Property has had serious violent criminal acts occur in and around the hotel facility. One particularly disturbing example was that in 2018 a person was murdered and dismembered in his hotel room by another guest, a taxi cab driver, and then stored in a freezer in taxi cab driver's room where it remained for over a year until discovered. Budget Suites employees, after the victim was murdered and dismembered in his hotel room, came in, cleaned the room, and handed the key to the next tenant—no one from Budget Suites informed the Dallas Police Department! Critical to BSA's guest, the taxi-cab murderer's successful evasion of being discovered as a murderer for a year was his ability to move the body, first to his cab and then to his room, without Budget Suites capturing anything on its surveillance video. The murderer took advantage of BSA's lack of adequate video surveillance and general lack of security.

39. There have also been numerous police reports of shootings, gunfire, and discharge of firearms in and around the immediate vicinity of the Property.

40. According to Dallas Police Department (hereinafter "DPD") records, in the two years prior to the incident, DPD responded to at least **286 calls for service, 137 were specifically**

**for violent crimes** in and around the BSA Property at issue, including but not limited to murders, shootings, violent assaults, assaults with a deadly weapon, robbery, major disturbance violence, and more.

41.    Chapter 125.0015 of the Texas Civil Practices and Remedies Code (CPRC) defines a common nuisance as "a person who maintains a place to which persons habitually go for the following purposes and who knowingly tolerates the activity and furthermore fails to make reasonable attempts to abate the activity maintains a common nuisance.[1] Such activities include:

- Capital Murder or Murder
- Aggravated Sexual Assault or Sexual Assault
- Aggravated Robbery or Robbery
- Aggravated Assault
- Unlawfully Carrying a Weapon
- Discharge of a firearm in a public place or reckless discharge of a firearm;
- Engaging in organized criminal activity as a member of gang;
- Deliver, possession, manufacture, or use of a controlled substance;
- Gambling, promotion, or communicating gambling information;
- Prostitution, promotion, aggravated promotion, or compelling; or
- Commercial manufacture, distribution, or exhibition of obscene material.[2]

42.    The past and ongoing criminal activities at and around this BSA Property show that Defendants have met each category of crime listed above. Indeed, by meeting each category and reviewing the number of incidents, it appears that Defendants' hotel is the very example of a

---

[1] Texas CIVIL PRACTICE AND REMEDIES CODE, CHAPTER 125. COMMON AND PUBLIC NUISANCES, SUBCHAPTER A. SUIT TO ABATE CERTAIN COMMON NUISANCES.

[2] Id., & https://dallaspolice.net/division/nuisanceriskpropertyteam/nuisanceabatement

common nuisance as defined by Chapter 125 of the Texas CPRC.

## CAUSES OF ACTION

43.    All conditions precedent to the filing of this lawsuit have been satisfied.

**A.    NEGLIGENCE/PREMISE LIABILITY**

44.    Plaintiffs incorporate each of the foregoing paragraphs by reference, as if set forth fully herein.

45.    Defendants, as the owners, occupiers, possessors, managers, and/or operators of the premises – the Budget Suites extended stay located at 10222 N. Walton Walker Blvd., Dallas, TX 75220 at the time of the occurrence, owed Plaintiffs a duty to exercise ordinary care to make the property safe from unreasonable and foreseeable risk of harm from the criminal acts of third parties. Defendants' retained control over the common areas as well as the safety and security of the properties and the parking lots. Defendants' burden was reasonable considering the social utility of the actor's conduct, the consequences of imposing the burden on the actor and other relevant competing individual and social interests and it was foreseeable considering the number, type, and proximity of the similar crimes over the two-year period previous to the shooting.

46.    Upon information and reasonable belief, the Budget Suites and its immediate surrounding areas were plagued with violent crime for years, which was open and obvious. Plaintiffs' injuries were foreseeable to Defendants, based upon the publicity of many of the previous incidents including newspaper articles and television news stories. Moreover, most of the shootings and crimes were reported directly to Budget Suites and their employees. Budget Suites, if acting as a reasonable .

47.    Even during the shooting of M.E., the gunman ran right past the manager continuing to discharge his firearm. Defendants failed to take reasonable measures to prevent the

*Plaintiff's Original Petition*    10

injury to Plaintiff, M.E., and such failure to prevent the injury was unreasonable and a proximate cause of Plaintiff's injuries.

48. M.E.'s injuries were proximately caused by Defendants' negligent acts and/or omissions, including but not limited to inoperable security cameras, lack of a sufficient number of security surveillance cameras, inadequate and improperly or undertrained security, insufficient lighting, failure to respond to security alerts, inadequate or failure to conduct background checks on residents, inadequate security protections for invitees and failure to install and/or repair physical barriers such as gates, locks, fences and doors.

49. Additionally, Budget Suites failed to secure an up-to-date security assessment, failed to require security patrol time logs detailing patrolled routes, and failed to have a comprehensive security plan. Further, Budget Suites failed to have an adequate number of security at pertinent times and its lack of security cameras denied any security the opportunity to view and monitor multiple locations at the same time. Premises being video monitored in strategic placement would also have been highly effective as related to the cost of the same.

50. On or about March 15, 2021, Defendants breached their duty to Plaintiff M.E. and failed to exercise ordinary care to protect Plaintiff from the unreasonable and foreseeable risk of criminal acts of third parties. Defendants' breaches of duty and failures include but are not limited to:

    a. Failing to exercise ordinary care to protect invitees;

    b. Failing to perform security assessments and implement a security plan;

    c. Failing to warn;

    d. Failing to provide adequate security;

    e. Failing to provide sufficient security despite knowledge of previous dangerous, criminal activity in the vicinity;

f. Failing to exercise reasonable care in the hiring or supervising of security responsible for protecting invitees;

g. Failing to intervene or prevent the shooting of Plaintiff;

h. Failing to properly patrol the common areas;

i. Failing to create or enforce security guidelines, plans, and policies for when extra security is warranted or needed;

j. Failure to respond to security alerts;

k. Failing to provide "post-orders" to security personnel;

l. Failing to properly contract armed security guards;

m. Failing to warn invitees of the threat of violence or criminal activities;

n. Failing to require adequate training to security personnel;

o. Failing to provide or ensure adequate deterrence measures;

p. Maintaining a nuisance;

q. Failing to have off duty police officers as security guards;

r. Failing to have adequate criminal deterrence mechanisms and safeguards in place; among others;

s. Failure to obtain a security assessment and create and follow a security plan;

t. In maintaining a nuisance and failing to abate criminal activity;

u. In inviting criminals and/or criminal element onto the premises;

v. In maintaining an establishment where criminality is encouraged;

w. Inoperable security cameras;

x. Lack of sufficient security cameras;

y. In failing to provide adequate deterrence measures;

z. Failing to do background checks on residents and long term guests;

aa. Failing to consider the safety needs of the families and minors at the Budget Suites;

bb. In failing to provide security of that of a reasonable and prudent security guard

      under the same of similar circumstances;

   cc. In failing to provide adequate training to its security personnel;

   dd. In failing to properly patrol the common areas;

51. Any combination of one or more of the foregoing particulars constitutes breach of their duty and the standard of care which proximately caused Plaintiff's injuries and harm.

52. Additionally, Defendants was negligent in failing to prevent the occupants of Unit 1083 from injuring Plaintiff M.E.

53. Upon information and belief, the occupants of Unit 1083 which BSA contends were responsible for the shooting outbreak, were known residents to BSA with a history of red flags and incidents which BSA ignored leading up to the shooting. Despite knowledge of the danger the occupants of Unit 1083 posed, BSA failed to warn Plaintiffs or take any reasonable measures to prevent the incident.

**B.   BYSTANDER LIABILITY**

54. Veronica Venzant, has a claim for bystander liability as:

   a. she was located near the scene of the incident as contrasted with one who was a distance away from it;

   b. the shock resulted from a direct emotional impact upon Plaintiff from the sensory and contemporaneous observance of the incident, as contrasted with learning of the accident from others after its occurrence; and

   c. Plaintiff and M.E. are closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

55. Additionally, the incident involved inflicted serious injuries on M.E. and as a bystander, Plaintiffs suffered shock as a result of witnessing the accident.

56.     Veronica Venzant, is the natural mother of M.E. She was within mere feet of M.E. when the shooting broke out and when M.E. was struck with a bullet; she watched the emergency aid provided to M.E. at the scene, observed him attended to by the ER personnel and then taken by ambulance; and was within ear shot and heard M.E. cry out when the bullet struck him.

57.     Ms. Venzant suffered shock and a direct emotional impact from the sensory and contemporaneous observance of the incident and bring bystander liability claims in their own right.

### C.    VICARIOUS LIABILITY

58.     Plaintiffs here re-allege the foregoing paragraphs and incorporate the same herein by reference as if fully set out here verbatim.

59.     Defendants is liable for the actions, acts or omissions of its employees, managers, officers, directors, members, partners, owners, and agents, to the extent applicable, acting within the course and scope of their employment with Defendants and in furtherance of such employment and additionally and alternatively such agents had the authority to act and did so in furtherance of the business entities interests. Additionally, and/or alternatively, such complained of employees were managers of the business entity.

60.     Whenever it is alleged herein that a Defendants committed an act or omission, it includes the acts and/or omissions of the agents, servants, managers and/or employees of Defendants while engaged in the course and scope of their employment and/or agency for Defendants.

61.     Whenever it is alleged herein that a Defendants committed an act or omission, it includes the acts and/or omissions of the agents, servants, managers and/or employees of Defendants while engaged in the course and scope of their employment and/or agency for the defendant.

D. **GROSS NEGLIGENCE**

62. Plaintiff would further show that Defendant's conduct, when viewed objectively from the standpoint of Defendants and its agents at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further, Defendants had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, including Plaintiff. The conduct of Defendants and its agents amounts to gross negligence or malice, as those terms are defined by law, so as to give rise to an award of exemplary or punitive damages.

63. By reason of such conduct, Plaintiffs are entitled to and therefore assert a claim for punitive and exemplary damages in an amount sufficient to punish and deter Defendants and other corporations like them from such conduct in the future. Accordingly, Plaintiff is entitled to recover exemplary damages under the Texas Civil Practice & Remedies Code § 41.003(a). Section 41.005(a)'s prohibition on exemplary damages based on the criminal act of another does not apply here because of the exemption provided by Section 41.005(b)(3) as this criminal act occurred at a location where, at the time of the criminal act, Defendants were maintaining a common nuisance under the provisions of Chapter 125, Civil Practice and Remedies Code, and had not made reasonable attempts to abate the nuisance.

E. **NEGLIGENCE PER SE**

64. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

65. Defendants violated multiple rules of law which make them liable under the theory of negligence per se. More specifically, Sec. 125.0015. COMMON NUISANCE states that:

> (a) A person who maintains a place to which persons habitually go for the following purposes and who knowingly tolerates the activity and furthermore fails to make reasonable attempts to abate the activity maintains a common nuisance:

(1) discharge of a firearm in a public place as prohibited by the Penal Code;

(2) reckless discharge of a firearm as prohibited by the Penal Code;

(3) engaging in organized criminal activity as a member of a combination as prohibited by the Penal Code;

(4) delivery, possession, manufacture, or use of a substance or other item in violation of Chapter 481, Health and Safety Code;

(5) gambling, gambling promotion, or communicating gambling information as prohibited by the Penal Code;

(6) prostitution as described by Section 43.02, Penal Code, solicitation of prostitution as described by Section 43.021, Penal Code, promotion of prostitution as described by Section 43.03, Penal Code, or aggravated promotion of prostitution as described by Section 43.04, Penal Code;

(7) compelling prostitution as prohibited by the Penal Code;

(8) commercial manufacture, commercial distribution, or commercial exhibition of obscene material as prohibited by the Penal Code;

(9) aggravated assault as described by Section 22.02, Penal Code;

(10) sexual assault as described by Section 22.011, Penal Code;

(11) aggravated sexual assault as described by Section 22.021, Penal Code;

(12) robbery as described by Section 29.02, Penal Code;

(13) aggravated robbery as described by Section 29.03, Penal Code;

(14) unlawfully carrying a weapon as described by Section 46.02, Penal Code;

(15) murder as described by Section 19.02, Penal Code;

(16) capital murder as described by Section 19.03, Penal Code;

(17) continuous sexual abuse of young child or disabled individual as described by Section 21.02, Penal Code;

(18) massage therapy or other massage services in violation of Chapter 455, Occupations Code;

(19) employing or entering into a contract for the performance of work or the provision of a service with an individual younger than 21 years of age for work or services performed at a sexually oriented business as defined by Section 243.002, Local Government Code;

(20) trafficking of persons as described by Section 20A.02, Penal Code;

(21) sexual conduct or performance by a child as described by Section 43.25, Penal Code;

(22) employment harmful to a child as described by Section 43.251, Penal Code;

(23) criminal trespass as described by Section 30.05, Penal Code;

(24) disorderly conduct as described by Section 42.01, Penal Code;

(25) arson as described by Section 28.02, Penal Code;

(26) criminal mischief as described by Section 28.03, Penal Code, that causes a pecuniary loss of $500 or more;

(27) a graffiti offense in violation of Section 28.08, Penal Code; or

(28) permitting an individual younger than 18 years of age to enter the premises of a sexually oriented business as defined by Section 243.002, Local Government Code.

## G. DECLARATORY RELIEF

66. Plaintiffs incorporate the foregoing paragraphs as if set forth verbatim herein.

67. Plaintiff Veronica Venzant, on behalf of M.E., asserts and requests from the Court a declaration that the Release signed by her on March 16, 2021, a day after the incident, is invalid as to M.E. due one or more of the following reasons:

(1) M.E. is not included as a releasing party;

(2) Against public policy;

(3) Fails to release against him as a matter of law;

(4) Release does not include named Defendants herein;

(5)  Fraudulent inducement; and

(6)  Signed under duress.

68.  Plaintiff Veronica Venzant, individually, asserts and requests from the Court a declaration that the Release signed by her on March 16, 2021, a day after the incident, is invalid due one or more of the following reasons:

(1)  Fraudulent inducement;

(2)  Signed under duress; and

(3)  Does not release named Defendants herein;

**H.     ATTORNEY FEES**

69.  Plaintiff is entitled to recover reasonable and necessary attorney fees that are equitable and just under Texas Civil Practice & Remedies Code section 37.009 because this is a suit for declaratory relief. See Tex. Civ. Prac. & Rem. Code §37.009.

## JURY DEMAND

70.  Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

## ALTERNATIVE ALLEGATIONS

71.  To the extent any allegation in the FACTS or CAUSES OF ACTION sections herein are inconsistent with any other allegation, such inconsistent allegations are pled in the alternative pursuant to Texas Rule of Civil Procedure 48. Further, Plaintiff reserves the right to amend and/or supplement this petition as the case progresses and further factual information is obtained.

## DAMAGES

72.  As a direct and/or proximate cause of Defendants' actions described herein, Plaintiff M.E. suffered damage, including:

    a.    Reasonable and necessary medical treatment in the past;

    b.    Reasonable and necessary medical expenses in the future;

    c.    Pain and suffering in the past;

    d.    Pain and suffering in the future;

    e.    Past and future physical impairment;

    f.    Past and future scarring and permanent disfigurement in the past and future;

    g.    Past and future mental anguish;

    h.    Costs of court and pre-judgment and post-judgment interest as allowed by law.

    i.    Lost income, wages and earning capacity in all reasonable probability in the future;

    j.    Exemplary damages.

Plaintiff Veronica Venzant, individually, seeks mental anguish damages in the past and in the future.

## NOTICE OF INTENT

73.    Plaintiff hereby gives notice of intent to utilize any and all items produced in discovery in the trial of this matter and the authenticity of such items is self-proven per the Texas Rules of Civil Procedure § 193.7.

## CONDITIONS PRECEDENT

74.    All conditions precedent to bringing this suit have occurred or been performed.

## PRAYER

Plaintiff respectfully prays that this Court grant judgment against Defendants, for actual and special damages, exemplary damages, costs of court, pre-judgment and post judgment interest at the highest rate permitted by law and for any and all further relief to which Plaintiff shows herself justly entitled.

Respectfully submitted,

**Mathias Raphael, PLLC**

BY: _____
Ori Raphael
State Bar No. 24088273
Damon Mathias
Texas Bar No. 24080170
Ashley Goldman
Texas Bar No. 24123704

**Mathias Raphael PLLC**
13101 Preston Rd., Ste. 501
Dallas, Texas 75240
Telephone: (214) 739-0100
Facsimile: (214) 739-0151
E-mail: Ori@mrlaw.co
E-mail: Damon@mrlaw.co
Email: Ashley@mrlaw.co

**ATTORNEYS FOR PLAINTIFF**